# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# NEW ALBANY DIVISION

| | |
|---|---|
| IN RE SAINT CATHERINE HOSPITAL OF INDIANA, LLC _____ UNITED STATES OF AMERICA,         Appellant,    v. SEILLER WATERMAN LLC,         Appellee. | Case No. 4:17-cv-00182-TWP-DML Bankruptcy Court Case No.: 12-91316-BHL-11 |

## ENTRY ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT

This matter is before the Court on an appeal by the United States of America from a decision of the Bankruptcy Court of the Southern District of Indiana, New Albany Division issued on September 13, 2017, denying its request for an order requiring Seiller Waterman LLC to disgorge attorneys' fees. For the reasons detailed below, the Bankruptcy Court's decision is **AFFIRMED**.

### I. PROCEDURAL BACKGROUND

Appellee Seiller Waterman LLC ("Seiller"), a law firm, represented Saint Catherine Hospital of Indiana, LLC (the "Hospital") and filed a Chapter 11 bankruptcy petition on behalf of the Hospital on June 19, 2012. Seiller's employment was approved by the Bankruptcy Court, and the firm represented the Hospital throughout the time it operated as a debtor-in-possession ("DIP"). Approximately two years later, in June 2014, the United States (on behalf of the Internal Revenue Service) ("IRS") and the United States Trustee moved the Bankruptcy Court to dismiss the proceedings or to convert the case to a liquidation; the Bankruptcy Court took no immediate action

on the motions. In November 2014, after a mediation, Seiller moved the Bankruptcy Court to appoint a Chapter 11 trustee to liquidate the Hospital's assets, settle claims, and distribute the proceeds under the court's supervision. The Bankruptcy Court appointed a trustee (the "Trustee"), who retained counsel, and Seiller's legal work on behalf of the Hospital ended.

While Seiller represented the Hospital as DIP, it received a total of $135,572.22 in attorneys' fees and expenses for legal work between 2012 and March 31, 2014, pursuant to two interim fee applications approved by the Bankruptcy Court. After Seiller's work for the Hospital had ceased because a Trustee (who was represented by his own counsel) had been appointed to manage the bankruptcy estate, Seiller filed a third interim fee application on January 12, 2015, seeking approval of a fee of $114,474.65 and expenses of $10,000.08 for the remainder of all of the work it had performed, between April 1, 2014 through December 31, 2014. The Trustee filed a "Limited Objection" to the fee application on February 3, 2015, to reserve his rights because he had not been able to discuss his questions and concerns with Seiller "due to more pressing demands in the case." The Trustee stated that if his questions were not resolved, he intended to file a more complete objection once a then-anticipated sale of assets was complete. No other creditors filed an objection to the third fee application.

On July 10, 2015, the Trustee and Seiller filed with the Bankruptcy Court an Agreed Entry resolving the Trustee's limited objection to Seiller's third application. The Agreed Entry provided, in pertinent part, that (1) Seiller's fees and expenses were allowed but Seiller would not be paid anything of value from the Trustee, the Debtor, or the Debtor's estate for any fees claimed in the third application and (2) the Trustee and the Debtor's estate, "directly and indirectly and derivatively on behalf of the Debtor," released and forever discharged Seiller from any claims or demands of any kind, whether known or unknown, related in any way to the bankruptcy

proceedings. The Bankruptcy Court approved the Agreed Entry on July 14, 2015, and ordered, consistent with it:

1. IT IS HEREBY ORDERED that the Agreed Entry is GRANTED on the terms specified below.

2. Seiller's claimed fees and expenses in the [third] Application are allowed in their entirety; provided, however, that Seiller shall not be paid or receive any item of value from the Trustee, the Debtor, or the Debtor's estate on account of the fees and expenses claimed in the [third] Application.

3. The Trustee and the Estate both directly and indirectly and derivatively on behalf of the Debtor, and all entities related thereto releases, acquits and forever discharges Seiller, and each of its respective owners, officers, directors, employees, servants, agents, representatives, attorneys, professionals, successors and assigns, from and against any and all claims, demands, causes of actions, or liabilities, of any kind and nature whatsoever, in law or in equity, whether known or unknown, currently existing or which may arise in the future, arising out of, resulting from, based upon, or related in any way to this chapter 11 case.

Thus, for the totality of its legal work as counsel to the Hospital as DIP, performed from 2012 through December 31, 2014, Seiller was awarded and paid a total of $135,572.22 (consisting of $132,557.00 in fees and $3,015.22 for expenses). In other words, Seiller and the Trustee resolved the Trustee's objections by agreeing that Seiller would be paid only what it had been paid pursuant to its first and second interim fee applications and would not be paid anything pursuant to its third application, and Seiller would receive the release described in the order.

On September 19, 2016, approximately two years after the Trustee was appointed, the Trustee filed a Motion to Disburse Funds and for Orderly Dismissal of Case. He reported that there were not sufficient funds to pay administrative claimants in full and that an orderly dismissal of the case was preferable to a conversion to Chapter 7 because the costs of administration by a Chapter 7 trustee would outweigh any potential value from such trustee's services. At that time, the allowed and not-yet-disallowed administrative claims totaled about $4.2 million, and the

3

Trustee held only about $1 million. The administrative claims include a claim by the IRS for unpaid employee trust fund taxes of about $2.6 million, claims for the Trustee's fees, and claims for attorneys' fees by Seiller, by the Trustee's counsel, and by counsel for the unsecured creditors' committee. In other words, the IRS and Seiller are both administrative claimants.

Dismissal has not yet occurred because of the subject appeal from the Bankruptcy Court's denial of the Trustee's and the United States' joint motion seeking an order requiring Seiller to disgorge a portion of the fees it has been paid. The joint motion was filed on May 4, 2017, and sought disgorgement in the approximate amount of $60,000.00. The Bankruptcy Court's denial of the motion was entered on September 13, 2017, and only the United States has appealed the Bankruptcy Court's order. The Trustee did not appeal.

## II.  JURISDICTION

Under 28 U.S.C. § 158(a)(1), district courts have jurisdiction over appeals from "final judgments, orders, and decrees" issued by bankruptcy judges. Finality in the bankruptcy context does not require, like most federal civil litigation, that the entire case be disposed of before an appeal is permissible. *Germeraad v. Powers,* 826 F.3d 962, 965 (7th Cir. 2016); *In re Morse Elec. Co.,* 805 F.2d 262, 264 (7th Cir. 1986). To assess finality, a district court determines if the bankruptcy court's decision "finally disposed of" or "conclusively determined" a discrete dispute within the case, such as a dispute over a creditor's claim or priority. *See Schaumburg Bank & Trust Co. v. Alsterda,* 815 F.3d 306, 312 (7th Cir. 2016); *In re McKinney,* 610 F.3d 399, 401 (7th Cir. 2010).

The Court agrees with the United States and Seiller that it has jurisdiction over the United States' appeal denying the motion for disgorgement; that order conclusively determines a discrete dispute.

4

### III. STANDARD OF REVIEW

As provided by Federal Rule of Bankruptcy Procedure 8013, the district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." In reviewing the bankruptcy court's final order, the district court reviews conclusions of law *de novo* and findings of fact for clear error. *In re Salem,* 465 F.3d 767, 773 (7th Cir. 2006). "Under this standard, if the [bankruptcy] court's account of the evidence is plausible in light of the record viewed in its entirety, a reviewing court may not reverse even if convinced that it would have weighed the evidence differently as the trier of fact." *Peoples State Bank v. Port Royal Aggregates, Inc.,* 193 B.R. 1020, 1022 (Bankr. S.D. Ind. 1996). A factual finding is not clearly erroneous unless the court is "left with the definite and firm conviction that a mistake has been committed." *Matter of Sheridan,* 57 F.3d 627, 633 (7th Cir. 1995). In contrast, *de novo* review of legal conclusions requires this Court to make an independent examination of the applicable law without deferring to the Bankruptcy Court's conclusions. *In re Brown,* 444 B.R. 173, 175 (S.D. Ind. 2011).

### IV. DISCUSSION

The principal argument by the United States presents a question of law: whether the Bankruptcy Court was required as a matter of law to order disgorgement of fees from Seiller to the extent necessary to result in a pro rata distribution among all of the Chapter 11 administrative claimants, including the IRS. As noted, the disgorgement amount at issue is approximately $60,000.00. The Bankruptcy Court determined that it was not required to order disgorgement under the circumstances of this case, and, as explained below, this Court agrees. The issue then becomes whether the Bankruptcy Court's decision not to order disgorgement was otherwise an appropriate exercise of its authority and discretion based on the facts. As further explained below,

5

the Court finds that the Bankruptcy Court appropriately exercised its authority and that its factual findings are not clearly erroneous. Therefore, the Bankruptcy Court's order is **affirmed**.

A. **The Supreme Court's decision in *Czyzewski* does not mandate disgorgement.**

In a Chapter 7 proceeding, the priority scheme under Section 726 must be followed in paying claims. This section requires that payment of claims "shall be made pro rata" (*see* Section 726(b)), although if the case is one that has been converted to Chapter 7, then an allowed claim for Chapter 7 administrative expenses incurred after conversion is paid first before any pro rata distribution. *Id.* The United States contends that even though the Hospital's Chapter 11 proceeding was not converted to a Chapter 7 case, the Chapter 7 priority scheme under Section 726 still must be followed where there is a structured dismissal of a Chapter 11 proceeding. A "structured dismissal" occurs where, as here, the Hospital's Chapter 11 estate is neither distributed pursuant to an approved Chapter 11 plan nor is the case formally converted to a Chapter 7 liquidation. The United States argues that the Supreme Court's recent decision in *Czyzewski v. Jevic Holding Corp.,* 137 S. Ct. 973 (2017), as a matter of law does not permit the Bankruptcy Court to depart from a pro rata distribution in a "structured dismissal" of a Chapter 11 proceeding. Therefore, it asserts, the Bankruptcy Court was required to order Seiller to disgorge fees that it had been paid to the extent necessary for it and the IRS (and other administrative claimants) to receive a pro rata distribution based on their respective allowed administrative claims.

In *Czyzewski,* the bankruptcy court dismissed a chapter 11 proceeding and ordered the distribution of the estate's assets in a way that deviated from the "basic priority rules that apply under the primary mechanisms the United States Bankruptcy Code (the "Code") establishes for final distributions of estate value in business bankruptcies." *Id.* at 978. The bankruptcy court approved a payment scheme that paid the secured creditor first, but then skipped over the next

priority creditor class (a group of employees that had a judgment against the debtor for unpaid wages) and paid the remaining assets to the third-in-line creditor class (a group of unsecured creditors that had pursued a lawsuit which resulted in the payment of funds to the estate). The court, while acknowledging that the Code does not address chapter 11 structured dismissals, ruled that there were not grounds to permit deviation from the basic priority system underlying the Code. Under that basic priority system, a chapter 7 liquidation *must* follow a certain priority scheme (lower priority creditors cannot be paid anything until higher priority creditors are paid in full) and a chapter 11 plan *cannot* impair the priority of a class of creditors if the impaired class objects. *Id.* at 983. The court left open the possibility, however, that a bankruptcy court *might* in a chapter 11 structured dismissal setting be permitted to allow some deviation "for cause" "to protect rights acquired in reliance on the bankruptcy case." *Id.* at 984.

In this Court's view, *Czyzewski* does not mandate disgorgement of Seiller's fees to achieve ultimate pro rata distribution among administrative claimants in this chapter 11 structured dismissal case. *Czyzewski* addressed the Code's basic priority system; it did not address pro rata distributions within classes of creditors. Nor did it concern whether a bankruptcy court can decline to order disgorgement where it has made, or makes, a final award of attorneys' fees.

Because the Court finds that *Czyzewski* does not require disgorgement in this instance, the Court turns to whether the Bankruptcy Court otherwise had the authority to decline to order disgorgement of fees paid to Seiller under the circumstances of this case.

**B.  A bankruptcy court may enter a final fee order that does not result in pro rata distribution among administrative claimants.**

In deciding that it would not order Seiller to disgorge fees, the Bankruptcy Court canvassed the relatively sparse case law in this area and found that disgorgement was not appropriate. In reaching this decision, Judge Lorch relied on two basic points: (1) that when he had approved and

7

entered the Agreed Entry, he had in essence made a final award of fees under Section 330 of the Code, and (2) even if he had the authority to disgorge fees paid under a final award, disgorgement was not appropriate here because of the value of Seiller's work to the estate and the absence of evidence that Seiller had "acted inappropriately or unreasonably amassed fees." This Court finds that Judge Lorch's account of the evidence is plausible, and his decisions in this regard should be upheld.

Sections 330 and 331 of the Code address attorneys' fees. The latter section addresses "interim compensation." It provides that an attorney whose employment has been approved by the bankruptcy court may apply on a periodic basis for disbursement of funds from the estate to pay for legal services that have been rendered and, after notice and a hearing, "the court may allow and disburse to such applicant such compensation or reimbursement." Section 330 addresses a final award of attorneys' fees. Section 330(a)(1)(A) provides that, after notice to the parties in interest and the United States Trustee and a hearing, the court may award reasonable compensation for "actual, necessary services" rendered by an attorney. Section 330(a)(3) prescribes that a reasonable fee must be based on "the nature, the extent, and the value" of the services rendered, taking into account "all relevant factors." Section 330(a)(5) then provides a disgorgement remedy. It states that any fee awarded under Section 330 must be reduced by any interim compensation that already has been awarded under Section 331. That reduction can produce a negative number; thus, "if the amount of such interim compensation exceeds the amount of compensation awarded under this section [330], [the court] may order the return of the excess to the estate." Thus, section 330 expressly contemplates that a court may determine that a reasonable fee, under all of the circumstances, is less than what has already been awarded and paid on an interim basis and order the return—or disgorgement—of that excess fee.

As Judge Lorch did, this Court finds persuasive the decisions of the bankruptcy courts in *In re St. Joseph Cleaners, Inc.,* 346 B.R. 430 (Bankr. W. D. Mich. 2006), and *In re Santa Fe Medical Group, LLC,* 557 B.R. 223 (Bankr. D.N.M. 2016) (relying on *St. Joseph),* that a bankruptcy court's power to order disgorgement of attorneys' fees derives from Section 330(a)(5). Thus, the bankruptcy court is entitled to make a final award of fees under Section 330 that either does or does not result in disgorgement. There is certainly no requirement or any mention in Section 330 that disgorgement must (or even should) be made to achieve a pro rata distribution among administrative claimants in a chapter 11 insolvency, structured dismissal, case. *See also In re Headlee Mgmt. Corp.,* 519 B.R. 452 (Bankr. S.D.N.Y. 2014) (refusing to order disgorgement of attorneys' fees solely to achieve pro rata distribution among administrative claimants).

This does not mean, as the *St. Joseph Cleaners* court acknowledged, that administrative insolvency—or other equitable factors—should not be taken into account. Indeed, they should; the "value" of services rendered by counsel must take into account all relevant circumstances, and administrative insolvency is relevant. It may even be appropriate for a bankruptcy court to place significant emphasis in a particular case on administrative insolvency and the reasons for that insolvency, and to decide in assessing the value of services rendered that counsel should not be paid any more than a pro rata share of assets finally available for distribution and must disgorge the rest. *See, e.g., Matz v. Hoseman,* 197 B.R. 635 (N.D. Ill. 1996) (affirming the bankruptcy court's disgorgement order, finding it had the power in this converted chapter 11 to chapter 7 case to order disgorgement of paid interim fees; the court did not rule that disgorgement was required).[1]

---

[1] The principal case that holds disgorgement is mandatory to achieve ultimate pro rata distribution is *Specker Motor Sales Co. v. Eisen,* 393 F.3d 659 (6th Cir. 2004). The facts in *Specker* are very different from those presented here. In *Specker,* the debtor's chapter 11 case lasted about five months before it was converted to chapter 7. There were no particular reliance interests or equities to take into account in deciding that a portion of the chapter 11 attorney's fee retainer ($10,000) should be disgorged to achieve pro rata distribution under chapter 7. Here, Seiller rendered services for over two years and its work resulted in the estate's largest asset recovery, as discussed in Section IV.C.

## C. Judge Lorch's evaluation of the equities and the value of Seiller's services is not clearly erroneous.

Judge Lorch's decision makes abundantly clear that the overarching reason for his decision to deny the United States' disgorgement motion was the significant value Seiller's services had in increasing the estate. Indeed, Seiller's services resulted in the single most important recovery. Seiller brought an adversary proceeding against the Indiana Family and Social Services Administration ("FSSA"), which ultimately resulted in payment by the FSSA of approximately $1.7 million. The lawsuit was brought in March 2013 and involved a matter of first impression that was ultimately decided in favor of the estate by the Seventh Circuit. That decision reversed in part a decision of the district court that found FSSA had not violated the automatic stay with respect to the withholding of nearly $1,000,000.00 from the estate. *See Saint Catherine Hospital of Indiana, LLC v. Indiana FSSA,* 800 F.3d 312 (7th Cir. 2015). Seiller had fully prosecuted the case in the bankruptcy adversary proceeding and on appeal to the district court. It also had written the opening brief in the appeal to the Seventh Circuit.

The United States contends on appeal to this Court that Judge Lorch did not properly consider that the Hospital's failure to pay its payroll trust fund taxes (which constitute the IRS's administrative claim that it has argued must be treated pro rata with Seiller's allowed fees) occurred on Seiller's watch, and it asks this Court to make a studied analysis and weighing of that issue. But the United States did not fairly present that issue to Judge Lorch, and this Court will not weigh the evidence for the first time. The United States made only a passing criticism in its reply brief in support of the disgorgement motion that equities should not favor Seiller because the payroll trust funds were not paid by the estate during Seiller's representation of the Hospital as a DIP. The United States also told the Bankruptcy Court in the Conclusion section of its reply brief that Seiller's work and its quality were "largely irrelevant" to the disgorgement issue.

10

Judge Lorch disagreed. He found that Seiller had "more than earned its fee," and if the estate had sufficient assets, this was the type of case where a fee enhancement could be considered.

This Court finds no basis, and certainly not in light of the clearly erroneous standard, to disturb Judge Lorch's weighing of the equities and his finding that Seiller had "more than earned" a total fee of $135,572.22 over the course of representing the Hospital as DIP.

**D.     The United States had sufficient opportunity to challenge Seiller's fees.**

The United States also argues that even if the Bankruptcy Court had the authority to refuse to order disgorgement and to consider various equities to decide the value of Seiller's legal services, the procedural vehicles by which the issue was decided did not provide proper notice to the IRS. In essence, the United States contends that Judge Lorch erroneously found that it had had sufficient opportunity to be heard on the finality of a fee award to Seiller. Judge Lorch decided that the United States had received sufficient notice. It had been served with Seiller's third interim fee application. It had been served with the Trustee's "limited objection" to that application. It had been served with the Agreed Entry between the Trustee and Seiller entering a fee award settlement, and it had been served with the Bankruptcy Court's order approving the Agreed Entry. Despite such notice, the United States never filed any objection or any request for reconsideration. Further, the United States had a full opportunity to raise any and all pertinent arguments with the Bankruptcy Court through its prosecution of the disgorgement motion. Given this procedural history, this Court declines to find that the disgorgement order should be reversed or remanded because of a lack of proper notice.

## V. CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the Bankruptcy Court's September 13, 2017 Order denying the United States' motion for disgorgement. The Court will enter final judgment by separate order.

**SO ORDERED**.

Dated: 9/26/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Arie M. Rubenstein
DEPARTMENT OF JUSTICE, TAX DIVISION
arie.m.rubenstein@usdoj.gov

Peter Sklarew
DEPARTMENT OF JUSTICE, TAX DIVISION
Peter.A.Sklarew@usdoj.gov

David Marcus Cantor
SEILLER WATERMAN LLC
cantor@derbycitylaw.com

Keith James Larson
SEILLER WATERMAN LLC
larson@derbycitylaw.com

Neil C. Bordy
SEILLER WATERMAN LLC
bordy@derbycitylaw.com

William P. Harbison
SEILLER WATERMAN LLC
harbison@derbycitylaw.com